UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUI CHANG ZHAO,<br><br>               Petitioner,<br><br>   v.<br><br>JOHN F. KELLY, ET AL.,<br><br>             Respondents. | Case No. CV 17-777-BRO (KES)<br><br>FINAL REPORT AND RECOMMENDATION STAYING PETITION UNTIL JULY 15, 2017 PENDING REMOVAL DEVELOPMENTS |

     This Final Report and Recommendation is submitted to the Honorable Beverly Reid O'Connell, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

     Petitioner is a detainee in the custody of the United States Immigration and Customs Enforcement ("ICE"). On January 21, 2017, Petitioner filed a Petition for Habeas Corpus by a Person in Federal Custody pursuant to 28 U.S.C. § 2241. (Dkt. 1.) Petitioner contends that he is being indefinitely detained in violation of

1   Zadvydas v. Davis, 533 U.S. 678 (2001).

2       On March 29, 2017, Respondents filed an Answer to the Petition. (Dkt. 9.)

3   Petitioner filed a reply on April 3, 2017. (Dkt. 10.)

4                                    **II.**

5                          **FACTUAL BACKGROUND**

6       Petitioner is a citizen of China and has been a legal permanent resident in the

7   United States since 2004. (Dkt. 9-1 [Declaration of Deportation Officer Jeremy

8   Calcador].) On July 1, 2015, Petitioner was convicted in the Los Angeles County

9   Superior Court of possession of marijuana for sale. (Id.) On December 27, 2015,

10  Petitioner was served with a notice to appear charging him with removability due to

11  drug-related violations. (Id.) On January 28, 2016, an immigration judge ordered

12  Petitioner removed to China. (Id.) On February 29, 2016, Petitioner filed an appeal

13  of the immigration judge's opinion, which the Board of Immigration Appeals

14  dismissed on May 23, 2016. (Id.) On June 3, 2016, Petitioner filed a petition for

15  review of the Board of Immigration Appeals' decision with the Ninth Circuit. The

16  Ninth Circuit entered a temporary stay of removal. See Rui Zhao v. Loretta Lynch,

17  Case No. 16-71764, at Dkt. 1 (9th Cir.). Petitioner later moved to dismiss the

18  petition for review. The Ninth Circuit dismissed the petition and lifted the stay of

19  removal on July 8, 2016. Id. at Dkt. 9.

20      Since July 2016, ICE has been involved in regular communications with

21  China with regard to Petitioner's travel documents. (Dkt. 9-1 at 2.) On July 26,

22  2016, Petitioner's travel document request was mailed to the Consulate of China in

23  Los Angeles. (Id.) In August 2016, a deportation officer emailed the Chinese

24  consulate to enquire about the status of Petitioner's travel documents. (Id.) The

25  Chinese consulate did not respond. (Id.) On September 8, 2016, the officer was

26  informed by the U.S. Headquarters Office of Removal and International Operations

27

28

                                      2

("Headquarters")[1] that China was currently reviewing cases for issuance of travel documents. On September 13, 2016, the deportation officer emailed the Chinese consulate, and again received no response. One week later the officer sent another email, to which the Chinese consulate replied and "indicated that China was verifying [Petitioner's] status." Id. at 2. In October 2016, the officer was informed by Headquarters that an "Assistant Attache of Removals" in Beijing is "working with [the] Government of China in Beijing on repatriation efforts." Id.

From October 2016 to March 29, 2017, communications between the deportation officer and the Chinese consulate followed the same pattern. The officer would email the consulate approximately once a month inquiring about Petitioner's travel documents. If the consulate responded, they would only say that China was "verifying [Petitioner's] status." See Id. at 3-4. Occasionally, Headquarters would inform the officer that the Department of Homeland Security, the U.S. Department of State, and the Assistant Attaché of Removals are "working with [the] Government of China in Beijing on repatriation efforts" and on receiving travel documents from China. Id. at 2-4.

### III.

### APPLICABLE LAW

A district court may issue habeas corpus relief where a petitioner demonstrates that he or she is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Section 2241 confers jurisdiction upon federal courts to consider challenges to the detention of aliens in removal proceedings. See Demore v. Kim, 538 U.S. 510, 517-18 (2003); Zadvydas, 533 U.S. at 637. Although the READ ID Act of 2005, Pub.L.No. 109-13, Div. B.,

---

[1] Headquarters is responsible for assisting field offices in obtaining travel documents necessary to execute administratively final orders of removal. (Dkt. 9-1 at 2.)

119 Stat. 231 (May 11, 2005) eliminated district court jurisdiction over habeas corpus petitions challenging final orders of removal, district courts retain jurisdiction over section 2241 petitions challenging the legality of an alien's detention. See Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006).

"When a final order of removal has been entered against an alien, the Government must facilitate that alien's removal within a 90-day 'removal period.'" Thai v. Ashcroft, 366 F.3d 790, 793 (9th Cir. 2004) (citation omitted); 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following:

(i)     The date the order of removal becomes administratively final;

(ii)    If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); see also Khotesouvan v. Morones, 386 F.3d 1298, 1300 n.3 (9th Cir. 2004). During the 90-day removal period, continued detention is required until the alien is actually removed. 8 U.S.C. § 1231(a)(2). Where removal cannot be accomplished within the 90-day removal period, continued detention is authorized by 8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6) did not authorize the Immigration and Naturalization Service ("INS") to detain an alien awaiting removal "indefinitely" beyond the statutory 90-day removal period. 533 U.S. at 689. Rather, the Supreme Court construed the statute to contain an implicit "reasonable time" limitation. Id. at 682. The Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 682, 689. The Court determined that six months was a presumptively

4

reasonable period of detention. AR 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." <u>Id.</u> If the Government fails to rebut the alien's showing, then the alien is entitled to relief. <u>See</u> e.g., <u>Chun Yat Ma v. Asher</u>, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012) (granting habeas relief and ordering petitioner released from custody after eleven month delay in removing petitioner to China). "For detention to remain reasonable, as the period or prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Zadvydas</u>, 533 U.S. at 701.

## IV.

## DISCUSSION

### A.    <u>Petitioner's Removal Order Became Final on July 8, 2016.</u>

Petitioner contends  that his removal order became final on  May 23, 2016, when the Board of Immigration Appeals dismissed Petitioner's appeal. However, the Court notes that Petitioner filed a petition for review in the Ninth Circuit, which automatically stayed his removal pending resolution of the petition. The petition was dismissed and the stay lifted on July 8, 2016. Pursuant to 8 U.S.C. § 1231(a)(1)(A)(ii), Petitioner's removal became final on July 8, 2016. <u>See</u> <u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1059 (9th Cir. 2008) ("The statute makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal.").Therefore, Petitioner's has been detained for approximately nine months following his final removal order, exceeding the 90-day removal period set forth in 8 U.S.C. § 1231(a)(1) and the six-month presumptive period established in <u>Zadvydas</u>.

**B.     The Circumstances of This Case Do Not Warrant Granting Relief At This Time.**

Respondent contends that Petitioner has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. Respondent argues that Petitioner has not demonstrated that the government of China has *refused* to issue travel documents. Rather, Respondent contends that Petitioner "merely asserts that the 'sheer length of his detention suggests that there is no reason to believe that [ICE] will be able to remove him in the reasonably foreseeable future.'" (Dkt. 9 at 4, citing Dkt. 1 at 6.) Respondent argues that "mere delay in the issuance of a travel document is insufficient to show that there is 'no significant likelihood of removal in the reasonably near future,' particularly where, as here, efforts to obtain the travel document are ongoing." Nasr v. Larocca, CV 16-1673-VBF (E), 2016 WL 3710200, at *4 (C.D. Cal. June 1, 2016) (report and recommendation), adopted 2016 WL 3704675 (C.D. Cal. July 11, 2016); see also Iddrisu v. Kelly, SACV 17-0038-AFM, at *4 (C.D. Cal Mar. 27, 2017) ("Where the evidence shows that the target country has granted (or is merely reviewing or processing) an application for travel documents, federal habeas courts have repeatedly found that an alien has failed to provide a good reason to believe there is no significant likelihood of his removal in the reasonably near future). Respondent contends that "although the process of obtaining travel documents in this case has not gone smoothly, it is by no means over." (Dkt 9 at 4.)

The Court disagrees with Respondent's interpretations of Petitioner's arguments and the nature of the ongoing communications with China. Petitioner does not argue that the "mere delay" in processing his travel documents is grounds for relief. Rather, he contends that China's communications demonstrate complete uncertainty as to whether and when his documents will be approved. The record of communications discussed above demonstrates that the Chinese government has "failed to provide any substantive response" regarding Petitioner's travel

documents since he was ordered removed. (See Dkt. 20 at 6.) At least some courts have noted that it is appropriate to grant habeas relief "where there [is] no definitive answer from the target county after several months as to whether it would issue travel papers for a detainee." Nsar, 2016 WL 3710200, at *3 (citing Nma v. Ridge, 286 F. Supp. 2d 469, 475 (E.D. Pa. 2003)); see also Kacanic v. Elwood, 2002 WL 31520362, at *3 (E.D. Pa. Nov. 8, 2002) (granting petition where petitioner was detained for one year awaiting removal, and target county "ha[d] been unable to tell the INS when a decision will be reached … [and] ha[d] never offered any reason why obtaining travel papers in this case has taken longer than normal."). Although Petitioner has not yet been detained one year, China has not indicated if or when a decision will be reached and has not explained the delay[2].

This case is distinguishable from the cases Respondent cites in support of denial. In Nsar, Lebanese officials *did* issue travel documents for petitioner well within the presumptively reasonable removal period; it was apparently only because of their lack of electronic compatibility that the petitioner was not promptly removed. Nsar, 2016 WL 3710200, at *1. Even after that initial mishap, Lebanese officials provided responses to ICE's requests and demonstrated their intent to issue documents in the correct format. Id. In Iddrisu, a Ghanaian official told ICE that a "travel document for petitioner would be issued within a month," providing a clearly foreseeable deadline for removal. SACV 17-0038-AFM, at *4.

Respondent contends, "ICE is now working with the State Department and another part of DHS to secure travel documents from China for aliens such as Petitioner." (Dkt 9 at 4-5.) General indications that U.S. agencies have been in discussions with China regarding repatriation efforts do not indicate that those

---

[2] An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely. Chun Yat Ma, 2012 WL 1432229, at *5. Here, neither party has provided any data concerning how long removal of an alien to China typically takes.

discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful. There is reason to be skeptical, because Petitioner attaches to his reply a declaration of a detention and deportation officer[3] indicating that in 2016, China issued 125 travel documents for U.S. detainees ordered removed, and that the issuance rate is approximately 50%. (Dkt. 10-1 at 4.) Petitioner contends that this demonstrates an unlikelihood that his travel documents will be issued in the reasonable future.

Without more information regarding how China determines which requests for travel documents to grant and how long the process typically takes, the Court cannot conclude that Petitioner has shown his removal within the next few months is unlikely. Even if China were to deny randomly 50% of all requests for travel documents, that fact would not show that Petitioner's request is more likely to be denied than granted.

Despite the lack of a definitive answer from China, the length of Petitioner's confinement and the persistent efforts by U.S. deportation officials to obtain travel documents do not support granting habeas relief at this time. Zadvydas made clear that the reasonableness of continued confinement is measured on a sliding scale; "the longer the detention stretches, the more imminent removal must be to justify further confinement." Zadvydas, 533 U.S. at 701. Petitioner has been held for approximately three months beyond the presumptively reasonable period established in Zadvydas. It is too early to conclude that removal efforts will not be successful within the next few months. The Court notes that as the length of Petitioner's confinement grows, the Court is unlikely to find continued communications like the ones occurring for the past nine months (i.e., short, monthly emails) sufficient to rebut Petitioner's claim that there is no significant

_____

[3] This declaration was filed in Yao Wen Mai v. Nancy J. Albi, Case. No. 16-cv-02259-JDE as an attachment to Respondent's answer.

likelihood of removal in the foreseeable future.

**C.**     <u>**This Case Shall Be Stayed until July 15, 2017.**</u>

A trial court has the inherent authority to control its own docket and calendar. <u>See</u> <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-55 (1936). This authority includes entering a stay of the action before it pending developments in other proceedings. <u>See</u> <u>Leyva v. Certified Grocers of California Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir. 1979). It is noted, however, that "habeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy." <u>Yong v. I.N.S.</u>, 208 F.3d 1116, 1120 (9th Cir. 2000). The Ninth Circuit has indicated that while a stay may be appropriate in habeas cases, it had never "authorized, in the interests of judicial economy, an indefinite, potentially lengthy stay in a habeas case." <u>Id.</u> at 1120. The Court finds that limiting this stay to three months with a specified end date respects the special circumstances presented in a habeas proceeding.

Due to the conflicting factors discussed above, the Court finds that the most appropriate course of action is to stay this case until July 15, 2017.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) staying this action until July 15, 2017, (2) setting the following briefing schedule: Respondent shall file a status report every 30 days (the first being due on **May 15, 2017**) detailing the diligent efforts undertaken to obtain Petitioner's travel documents or to obtain an estimated date by which China is expected to issue his travel documents, and China's responses thereto. After Respondent's third status report (due on **July 15, 2017**), Petitioner shall file a supplemental brief in support of his Petition setting forth any additional arguments for granting habeas relief. Respondent shall file a response **within 20 days of service**.

Dated:  April 27, 2017

KAREN E. SCOTT
United States Magistrate Judge